MISSOURI, K. & T. RY. CO. OF TEXAS v.
CARDWELL.    (No. 8411.)

(Court of Civil Appeals of Texas.   Ft. Worth.
June 17, 1916.)

**1. NEGLIGENCE ⬉136(9)—JURY QUESTION.**

Negligence, whether of plaintiff or defendant, is generally a question of fact, and becomes a question of law only when the act done is in violation of law, or when the facts are undisputed and admit of but one inference.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 293–297; Dec. Dig. ⬉136(9).]

**2. NEGLIGENCE ⬉136(9) — EVIDENCE — DIRECTED VERDICT.**

To authorize a directed verdict on the issue of negligence, the evidence must be of such character that there is no room for ordinary minds to differ as to the conclusion to be drawn.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 293–297; Dec. Dig. ⬉136(9).]

**3. RAILROADS ⬉350(15)—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—QUESTION OF FACT.**

Plaintiff, who was injured by his head striking the end of a projecting bolt while riding a mule through a passage underneath defendant's railway, when his mule ran away, was not negligent as a matter of law, although he knew the bridge to be so low that a man on horseback must lean over to guard against injury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1168; Dec. Dig. ⬉350(15).]

**4. RAILROADS ⬉350(15)—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—QUESTION OF FACT.**

Where plaintiff, knowing the dangerous character of a passageway under a railroad crossing his inclosure, was injured while using it when his mule ran away, the fact that there was a grade crossing 1,800 feet east of such passageway did not make plaintiff guilty of contributory negligence as a matter of law in not using such grade crossing, where no showing was made that plaintiff had a right of way through the land on the other side.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1168; Dec. Dig. ⬉350(15).]

**5. RAILROADS ⬉303(6)—NEGLIGENCE—INJURIES TO INVITEE OR LICENSEE.**

Where defendant railroad closed a grade crossing that had been in use for 20 years and improved a passageway under its track connecting portions of plaintiff's inclosure, which passageway was used by plaintiff and his landlord for six years, whether plaintiff's right to use such passageway was by implied contract or whether he was a mere invitee was immaterial in determining the defendant's negligence in maintaining a defective passageway.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 966; Dec. Dig. ⬉303(6).]

**6. NEGLIGENCE ⬉32(1) — INJURIES TO INVITEE OR LICENSEE.**

The owner of premises who invites others thereon or knowingly permits them to use or remain thereon must exercise reasonable care so as to use and maintain such premises as to prevent injuries to such licensee or invitee.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 42; Dec. Dig. ⬉32(1).]

**7. NEGLIGENCE ⬉61(1)—"PROXIMATE CAUSE."**

The "proximate cause" of an injury in a legal sense is not necessarily the immediate or sole cause.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 74; Dec. Dig. ⬉61(1).

For other definitions, see Words and Phrases, First and Second Series, Proximate Cause.]

**8. NEGLIGENCE ⬉62(1)—PROXIMATE CAUSE—INTERVENING CAUSES.**

If defendant's negligence be a concurring cause operating at the same time in producing the injury as an intervening cause, it may be the proximate cause if the injury or some like injury could have reasonably been foreseen as a consequence of such negligence.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 76, 78; Dec. Dig. ⬉62(1).]

**9. NEGLIGENCE ⬉62(1)—PROXIMATE CAUSE—INTERVENING CAUSE.**

An injury will not be said to be proximately caused by an intervening agency other than defendant's negligence, unless such agency entirely supersedes the act of negligence and was in itself responsible for the injury, and was of such character that it could not reasonably have been foreseen or anticipated, but, if both agencies are required to produce the injury or if both concurrently contributed thereto, one will not exculpate the other, since each would still be an efficient cause.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 76, 78; Dec. Dig. ⬉62(1).]

**10. NEGLIGENCE ⬉4 — REASONABLE CARE — PROBABILITY OF SAME INJURY.**

To incur liability for negligence, it is not necessary that the tort-feasor must or could have foreseen that the particular injury occurred, but it is sufficient if it reasonably appears that an ordinarily prudent person could have foreseen that a similar injury might arise as a probable result.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 6; Dec. Dig. ⬉4.]

**11. RAILROADS ⬉350(32) — NEGLIGENCE — PROXIMATE CAUSE—JURY QUESTION.**

The fact that plaintiff's mule was frightened and ran away did not relieve defendant of liability for its negligence; the proximate cause of the injury being for the determination of the jury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1190; Dec. Dig. ⬉350(32).]

**12. NEGLIGENCE ⬉136(25)—PROXIMATE CAUSE—JURY QUESTION.**

The proximate cause of an injury is ordinarily a jury question.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 326–332; Dec. Dig. ⬉136(25).]

**13. TRIAL ⬉260(8)—INSTRUCTIONS COVERED BY GENERAL CHARGE.**

The refusal of a charge requested by defendant on contributory negligence is not error, where no exception or complaint is made to the court's general charge on that issue.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 657; Dec. Dig. ⬉260(8).]

**14. TRIAL ⬉191(8)—INSTRUCTIONS—INVADING PROVINCE OF JURY.**

An instruction that plaintiff was guilty of contributory negligence in the use of an underground passageway if he knew such use to be dangerous was properly refused as submitting certain facts in evidence as constituting negligence which invades the province of the jury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 429, 430; Dec. Dig. ⬉191(8); Negligence, Cent. Dig. §§ 356–360; Railroads, Cent. Dig. § 1383.]

**15. TRIAL ⬉253(4)—INSTRUCTIONS—IGNORING ISSUES — CONTRIBUTORY NEGLIGENCE — PROXIMATE CAUSE.**

An instruction that charged defendant for liability for negligently maintaining an instrumentality which resulted in plaintiff's injury, and which ignored the issues of plaintiff's con-

tributory negligence and the proximate cause of the injury, was improper.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 613, 616; Dec. Dig. ⊚═253(4).]

16. TRIAL ⊚═296(3)—INSTRUCTIONS—CURE BY OTHER INSTRUCTIONS.

Error in giving such instruction *held* prejudicial, and not cured by other instructions properly presenting the issues of contributory negligence and proximate cause.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 709; Dec. Dig. ⊚═296(3).]

17. RAILROADS ⊚═348(1)—NEGLIGENCE—INJURY FROM DEFECTIVE VIADUCT — SIMILAR VIADUCTS.

The fact that a railroad bridge is constructed in the same manner as all other bridges of its kind is not conclusive that its maintenance for use as the roof of an underground passageway between portions of an inclosure was not negligence.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1138, 1140, 1141; Dec. Dig. ⊚═348(1).]

Appeal from District Court, Montague County; C. F. Spencer, Judge.

Action by Albert Cardwell against the Missouri, Kansas & Texas Railway Company of Texas. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

John Speer, of Bowie, and J. M. Chambers, of Dallas, for appellant. W. S. Jameson and Paul Donald, both of Montague, and J. A. Templeton, of Ft. Worth, for appellee.

CONNER, C. J. The plaintiff was a tenant upon the farm of the estate of D. C. Jordan, through which defendant's line of railroad passes, the tenant houses being on the north side and the balance of the farm land on the south side of the right of way, which runs in a general direction from east to west. Panther creek crosses the farm running in a northerly direction, and over this creek defendant has a bridge about seven feet high beneath which a passway has existed since the road was built in 1885 or 1886. About 1895 the right of way was for the first time fenced. At this bridge the fences at either end were turned in and attached to the end of the bridge, leaving an opening way under the bridge and across the right of way. At the time the right of way was fenced there was a crossing on the right of way about 300 yards east of the bridge, which had been constructed and maintained by the railway company for the use of the owner of the farm, D. C. Jordan, from the time of the construction of the road until the right of way was fenced. Gates were placed in the right of way fence, and the crossing was thereafter continuously maintained and used until about the year 1904 or 1905, when the defendant closed the gates leaving open the passway already mentioned under the bridge. At the time of closing the gates appellant's section men leveled down the bed of the creek under the bridge so as to make it more passable. This bridge was constructed in the usual way with bolts extending from the timbers above down through the stringers and the ends of the bolts extended two or three inches below the underside of the stringers, and the bridge was at all times so low that a man could not ride on horseback under it without leaning over to prevent his head from striking the under parts of the bridge.

The plaintiff rented and moved upon the Jordan farm and cultivated it for the years 1910 and 1911, and in passing from the residence on the north to the farm on the south continuously used the passway under the bridge, until the time of his injury, as hereinafter detailed, which was in April, 1911. At the time of his injury plaintiff was attempting to cross the right of way riding one mule and leading another. About the right of way fence on the north side the mule he was riding became frightened at a piece of tie lying on the ground and ran under the bridge, where plaintiff's head came in contact with the end of one of the bolts projecting below the stringers, thus causing the injuries for which damages were sought. The evidence shows that the plaintiff knew the conditions of the crossing under the bridge, knew of its approximate height, and of the extending bolts, and knew that it was dangerous, and requests had been made several times of the section foreman to have the company open the gates that had been closed; the foreman, however, declining to so act, stated that he was without authority to do so, though the requests were forwarded to those "higher up."

The plaintiff alleged that the crossing east of the bridge had been put in under a contract with D. C. Jordan, and that the closing of the gates in 1904 was illegal. It was further alleged that the crossing under the bridge was dangerous and negligently constructed and maintained.

The defendant answered by a general denial, plea of contributory negligence, and specially denied that it had designated the bridge as a crossing or authorized any agent or employé to so designate it.

The trial was before a jury, and resulted in a verdict and judgment in the plaintiff's favor for the sum of $6,000, and the defendant railway company has appealed.

[1, 2] Appellant first insists that the court erred in refusing to give its requested charge peremptorily instructing the jury to find a verdict for the defendant. One ground of the contention is that the evidence conclusively showed that plaintiff was guilty of contributory negligence. It is true that the evidence without conflict shows that for more than a year prior to the plaintiff's injury he knew that the bridge in question was not high enough to ride under it without stooping, and knew of the presence of the bolts extending below the timbers, and knew in a general

way that the crossing was a dangerous one; yet we do not believe that the court would have been justified in taking the issue away from the jury. The rule by which we should be guided has been often announced, but, perhaps nowhere more clearly than by Justice Brown of our Supreme Court in the case of Lee v. I. & G. N. Ry. Co., 89 Tex. 583, 36 S. W. 63. He there said:

"Negligence, whether of the plaintiff or defendant is generally a question of fact, and becomes a question of law to be decided by the court only when the act done is in violation of some law, or when the facts are undisputed and admit of but one inference regarding the care of the party in doing the act in question; in other words, to authorize the court to take the question from the jury, the evidence must be of such character that there is no room for ordinary minds to differ as to the conclusion to be drawn from it."

[3] The rule was reiterated and applied in the case of Choate v. S. A. & A. P. Ry., 90 Tex. 82, 36 S. W. 247, 37 S. W. 319, and has been followed by many other cases that might be cited. In the case before us it is clear that the plaintiff at least violated no statute in attempting to use the underground passage as he did. The testimony to our minds makes it evident that after closing the gates east of the bridge, as was done, the servants and employés of the appellant company in a measure prepared the passway under the bridge to supply a needed passage across appellant's tracks that had been destroyed by the acts of appellant in closing the long-standing gates theretofore provided. Plaintiff, as the testimony showed, had used this underground passway for more than a year, and perhaps others, and the record discloses no previous resulting injury. The jury in answer to the submission of the issue evidently found, under the court's charge, that the plaintiff was not guilty of contributory negligence at the time and under the particular circumstances he attempted to go under the bridge on the occasion in question, and the mere fact that in a general way the plaintiff knew of the dangerous condition of the bridge is not conclusive against the plaintiff on the issue of his contributory negligence. In the case of G., C. & S. F. Ry. Co. v. Gasscamp, reported in 69 Tex. 545, 7 S. W. 227, the plaintiff, Gasscamp, was injured in attempting to pass over a bridge upon a public road where the highway crossed the tracks of the railway company. The plaintiff himself testified to the defective condition of the bridge and to his knowledge of the fact, and it was there contended, as here, that he was guilty of contributory negligence in that he attempted to ride across the bridge when he knew it was defective and dangerous. In disposing of the question the court said:

"The issue of contributory negligence was submitted to the jury, and has by the verdict been determined in plaintiff's favor. This is conclusive of the question, unless we can say that the act of plaintiff was negligent in law, or at least that it tended so strongly to establish negligence on his part that the verdict should not be permitted to stand. According to the rule in this court, in order that an act shall be deemed negligent per se, it must have been done contrary to a statutory duty, or it must appear so opposed to the dictates of common prudence that we can say, without hesitation or doubt, that no careful person would have committed it. It is apparent that this cannot be said of the plaintiff's conduct in this case."

In this connection reference was made to the line of authorities, which in such cases imposes upon the traveler the duty of selecting another safe passageway, if there be one, and further says:

"It is accordingly held, on the other hand, that if the passenger or traveler have no other convenient way, the mere fact that he takes the chances of a known danger and attempts a passage is not controlling proof of his negligence. Whether the act be negligent or not depends upon the circumstances attending it; and the question is for the determination of the jury" —citing numerous cases with approval, in one of which (County Commissioners v. Burgess [61 Md. 29, 48 Am. Rep. 88]), the following language was used: In this case the knowledge of the plaintiff was some evidence of negligence, proper to go to the jury to be considered by them in conjunction with the condition of the bridge of which he had knowledge, and to be found a bar only in case they found the bridge from the proof to be wholly unfit for use, and that he knew its true condition."

And our Supreme Court concluded by stating:

"This language recognizes the correct rule and is strictly applicable to the case now before us. The defendant by showing that many persons habitually used the bridge with safety proved that a mere attempt to cross it was not conclusive evidence of negligence."

The case from which we have quoted so liberally has not only been followed and applied by this court, but by many others. See Cowans v. F. W. & D. C. Ry., 40 Tex. Civ. App. 539, 89 S. W. 1116; 3 Notes to Texas Reports, p. 911.

[4] In the case before us there was an attempt made to show that the plaintiff had another and a safe way to cross appellant's right of way, in that there existed a grade crossing over appellant's right of way with gates in the right of way fences some 900 feet east of the grade crossing that had theretofore been closed as hereinbefore stated, but we have attached but little, if any, importance to this testimony from the fact that it evidently was not a convenient crossing in the sense that we can say as a matter of law that the plaintiff's failure to use it amounted to contributory negligence. In the same connection it was shown that the plaintiff's landlord did not own the land on the north side of the right of way of the free grade crossing last mentioned, and no evidence, as we recall, has been pointed out indicating that the plaintiff would have had any legal right to cross the right of way from the farm on the south, which he was cultivating, to and over the land owned by such other person on the north so as to get to the tenant houses where plaintiff lived, situated almost immediately north of the crossing under the

bridge. We think the issue of plaintiff's contributory negligence was one for the jury's determination.

[5, 6] It is further insisted that there was no proof of a contract on appellant's part to maintain a crossing over its right of way, as plaintiff alleged, and that plaintiff's right to use the underground passage, at most, was that of an invitee only; but in these contentions we find no foundation for a peremptory instruction. It is true no witness testified to an express contract by appellant to maintain a crossing over its right of way, but it was shown without dispute that a crossing was provided and maintained by appellant as early as 1885 or 1886, and continuously used by D. C. Jordan, the owner of the farm through which appellant's line of railway extended, until the right of way was fenced in 1895, that at this time the crossing was continued, appellant placing in its right of way fence gates through which the owner might pass from his residence to the cultivated portion of his farm, and that the crossing and right of way gates were maintained until the gates were closed in 1904 or 1905, covering a period in all of some 20 years, and this evidence, in our judgment, authorized an inference that at the time appellant constructed its road in 1885 the owner, D. C. Jordan, then reserved, or to him was then granted by the appellant company, the right to pass over appellant's right of way and track, as, it is evident, was an imperative need of the situation caused by the construction of the road, and the situation of the owner's houses and cultivated lands. And, as it seems to us, the action of appellant's employés in preparing the underground passageway, as they did, is susceptible of no other reasonable construction than that it was intended that such underground passageway should be substituted for that which had been closed, presumably for appellant's convenience. It is certainly true that within the knowledge of appellant's employés, not only of the section men, but of those higher up, the owners and tenants of the D. C. Jordan farm continued to use, as they were compelled under the circumstances to do, the underground passageway from about 1904 or 1905, when the crossing gates were closed, until the plaintiff's injury in April, 1911, and there is no evidence indicating that appellant, or any one for it, protested against such use of the underground passageway. On the contrary, the evidence as a whole relating to the subject, as we view it, amounts to a recognition on appellant's part of a right to so use such underground passageway, or certainly to an invitation and permissive use of the same, and whether one or the other, as we think, can make but little difference in the degree of care required of appellant in maintaining the underground crossing.

No principle seems better established in the authorities than that the owner of premises who invites others thereon, or knowingly permits them to use or remain thereon, must exercise at least ordinary care to so maintain and use his premises as to prevent injuries to such invitees or licensees. Johnson v. Atlas Supply Company, 183 S. W. 31, by this court, not yet officially published.

It is further insisted with apparent force that appellant's negligence in maintaining the underground crossing in the manner in which it was maintained, even if negligent, was not the proximate cause of the plaintiff's injury, the contention being that the fright and running of the mule, and not the condition of the bridge, was the proximate cause, and the following cases are cited in support of this contention: T. & P. Ry. Co. v. Doherty, 15 S. W. 44; T. & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S. W. 162; Neely v. F. W. & R. G. Ry. Co., 96 Tex. 274, 72 S. W. 159; St. L. S. W. Ry. Co. v. Wilkes, 159 S. W. 126; Hartnett v. Boston Store, 265 Ill. 331, 106 N. E. 837, L. R. A. 1915C, 460. We shall not undertake to make a close analysis of these cases and attempt to show the particular respects in which they are distinguishable from the one we now have before us, but even in the Bigham Case, cited by appellant, it was said, among other things:

"We are not prepared to hold that in no case can the original cause of the injury be deemed the proximate cause, where an independent and disconnected agency has supervened and brought about the result. The fact of the intervention of an independent agency, it occurs to us, bears more directly upon the question whether the injury ought, under all the circumstances, to have been foreseen; and, where this latter fact appears, we think that the original negligent act ought to be deemed actionable."

And in Seale v. Railway Co., 65 Tex. 274, 57 Am. Rep. 602, it was said:

"If the intervening cause and its probable or reasonable consequences be such as could reasonably have been anticipated by the original wrongdoer, the current of authority seems to be that the connection is not broken."

[7-9] The "proximate cause" in a legal sense is not necessarily the immediate or sole cause. If the negligence of the defendant be a concurring cause, operating at the same time in producing the injury as the intervening agency, it may be a proximate cause, if the injury, or some like injury, could have been reasonably foreseen to follow as a consequence of the negligence shown. See Gonzales v. City of Galveston, 84 Tex. 3, 19 S. W. 284, 31 Am. St. Rep. 17; Shippers' Compress & Warehouse Co. v. Davidson, 35 Tex. Civ. App. 558, 80 S. W. 1032; Obermeyer v. Logeman Chair Co., 120 Mo. App. 59, 96 S. W. 677; Sickles v. M., K. & T. Ry. Co. of Texas, 13 Tex. Civ. App. 434, 35 S. W. 493, and authorities therein cited. As said in one of the cases cited (Shippers' Compress & Warehouse Co. v. Davidson, supra):

"Intervening agencies sometimes interrupt the current of responsible connection between negligent acts and injuries, but, as a rule, these agencies, in order to accomplish such a result, must entirely supersede the original culpable act, and

be in themselves responsible for the injury, and must be of such a character that they could not have been foreseen or anticipated by the wrong-doer. If it required both agencies to produce the result, or if both contributed thereto as concurrent forces, the presence and assistance of one will not exculpate the other, because it would still be the efficient cause of the injury."

[10-12] As it seems to us, the language just quoted applies here. The bridge in question was known by appellant and its employés, whose duty it was to see to the maintenance of its tracks and ditches, to be too low. The existence and situation of the projecting bolts were known; for appellant invokes proof of the fact that its construction was as all other bridges of like kind, and that in all such cases the superstructures were fastened to the stringers by protruding bolts, and as it seems to us, it could have been easily fore-seen that an injury similar to the one in question might arise. It is not necessary that the tort-feasor must or could have fore-seen that the particular injury complained of would probably occur. It is sufficient if it reasonably appears that a person of ordi-nary prudence in the light of all the sur-rounding circumstances should have foreseen that some injury of a similar character might arise as a probable result. M., K. & T. Ry. Co. of Texas v. Morgan, 49 Tex. Civ. App. 212, 108 S. W. 725; M., K. & T. Ry. Co. v. Harrison, 56 Tex. Civ. App. 17, 120 S. W. 254; Greer v. Railway Co., 158 S. W. 740. In the case before us it seems clear that the low structure of the bridge and protruding bolts was a concurrent operating cause of ap-pellee's injury, and, if the maintenance of the bridge in the condition it was shown to be constituted negligence, as was for the jury's determination, then, as it seems to us, the mere fact that the mule was frightened at something by the roadside does not pre-vent the negligence of the appellant, if any, from being the proximate cause in a legal sense of appellee's injury. It must have been within the contemplation of appellant from the necessarily constant use of the passage-way by a farmer and his tenants that it would be used by men and horses, and by the passage of wagons, and that occasion might arise when some unexpected happening would bring the user in contact with the low-hang-ing bridge. At least, as we think, it was for the jury's determination; for, as said in Railway Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256:

"The true rule is that what is the proximate cause of an injury is ordinarily a question for the jury * * * it is to be determined as a fact in view of the circumstances attending it."

The above rule is approved in Sickles v. Railway Co., 13 Tex. Civ. App. 434, 35 S. W. 495. The question of proximate cause was submitted to the jury in this case, and we think properly so. So that on the whole we conclude that for no reason assign-ed did the court err in refusing to give the peremptory instruction. Appellant's first as-signment will accordingly be overruled.

In appellant's second assignment complaint is made of the refusal of the court to give the following special instruction requested by appellant:

"Gentlemen, at the request of the defendant, I charge you as follows: That if you find and believe from the testimony in this case that the use of the underground passageway used by plaintiff was a dangerous one, and that all the dangers were apparent to plaintiff before and at the time he was injured, then he was guilty of contributory negligence in using the same, and your verdict will be for the defendant."

[13, 14] We think this assignment may be briefly disposed of by the statement that the court submitted the issue of plaintiff's con-tributory negligence in a charge not com-plained of on this appeal by any assignment of error, and by the further statement that, as we understand the rule, it is improper for the court to submit certain facts in evi-dence as constituting negligence if found by the jury. It is held that such a charge takes from the jury the question of negligence as a fact. See I. & G. N. Ry. Co. v. Dyer, 76 Tex. 156, 13 S. W. 377. The charge quoted plainly contravenes the rule stated, and appellant's second assignment will therefore be overrul-ed without further discussion.

Appellant's third assignment, however, we find presents reversible error: Therein com-plaint is made of the action of the court in giving the following special instruction at the plaintiff's request, viz.:

"If at any time after closing of the gates crossing the agents of the defendant in charge of the right of way did any acts or said any-thing to encourage or invite the plaintiff to use said bridge crossing as alleged by him, and he thereafter did use said bridge crossing under the said bridge, defendant would be liable for any damage sustained by plaintiff if caused by the negligent manner in which said crossing was made or maintained under the bridge as hereto-fore indicated in the main charge, if defendant was negligent as alleged."

[15] A mere reading of the charge, as we think, renders it apparent that thereby the issue of plaintiff's contributory negligence was excluded. Under the evidence it seems plain that the issue of contributory negli-gence was in the case. It was so regarded by the court, and apparently by the parties; for, as stated, it was submitted to the jury without objection on the part of either plain-tiff or defendant, and the special charge requested instructed the jury, regardless of the issue of contributory negligence, to find for plaintiff upon a determination in his favor of the facts stated in the special charge. It may be noted, too, that the special charge likewise excludes the issue of proximate cause, which seems also to have been in the case, and was certainly submitted by the court to the jury as one of the issues by it to be determined.

[16] Appellee, however, insists that the reference in the special charge to the main charge renders the above strictures unfound-

ed, but we cannot so conclude. The words "as heretofore indicated in the main charge" plainly, as we think, relate to the issue of appellant's negligence in the matter of maintaining the bridge in the condition it was. At least such reference seems altogether insufficient to convey to the jury the idea that the special charge was to be qualified by the court's instructions on the issues of contributory negligence and proximate cause. Nor can we say, as appellee further insists, that the special charge was harmless under the operation of Rule 62a (149 S. W. x). So that, as already stated, we have been unable to avoid the conviction that the special charge was upon the weight of the evidence, in that it ignored and excluded vital issues in the case to appellant's probable prejudice, from which it must follow that appellant's third assignment should be sustained and the judgment reversed. See I. & G. N. Ry. Co. v. Underwood, 64 Tex. 463.

[17] A number of other assignments of error are presented, but we cannot notice each particularly without unduly extending this opinion. We think it sufficient to say that they have been examined, and we find no reversible error in them. Possibly we should add that the fact that the bridge as originally constructed was constructed as all other bridges of the kind is by no means conclusive on the issue of appellant's negligence in maintaining the bridge as an underground passageway. As originally constructed, it may have been and was intended for an altogether different purpose, and for the purpose intended in all things sufficient, but when later applied to the additional use as a covering for the passageway, as indicated by the testimony in this case, the question further appropriately arises as to whether appellant's maintenance of the bridge in its original form for the new uses to which it was put constituted negligence.

We conclude that all assignments of error should be overruled except the third, which we sustain, and because of the error therein complained of it is ordered that the judgment be reversed, and the cause remanded.